

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 MAR 31  PM 4: 30

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ENGINEERING DYNAMICS, INC.                    CIVIL ACTION

VERSUS                                        NUMBER: 89-1655

STRUCTURAL SOFTWARE, INC., ET AL.             SECTION: "S"(5)


**ORDER AND REASONS**


The next issue which the Court must decide in connection with this remand is whether the revised user's manual, identified as StruCAD*3D Manual, Version 3.3, is violative of any copyright which plaintiff validly holds.

In its opinion remanding this matter, the Fifth Circuit noted that plaintiff had argued that SSI's revised manual contained many examples of allegedly infringing material from the old manual which the district court had held to be infringing. The special master, however, disagreed. Because of procedural problems attendant to the Court's prior reliance on the opinion of the special master, this issue is still subject to discussion at the present time. The Court notes that defendant has relied on the report of the Special Master.

DATE OF ENTRY
MAR 3 1 2003

Fee
Process
X Dktd  16
✓ CtRmDep
Doc No. 324

The Court addresses the issue initially by attempting to define the areas in the user's manual with specificity which plaintiff contends are infringing.  In so doing the Fifth Circuit has instructed the Court to give particular attention to whether objection is lodged to facts as opposed to particularized expression of concepts.  The Fifth Circuit noted that plaintiff had emphasized the "repeated use of a table of default values of certain engineering constants admittedly taken from EDI's copyrighted manuals" as proof of infringement.  However, as opined by the Fifth Circuit, "mathematical constants used in [a] computer program [are] uncopyrightable."  Engineering Dynamics, Inc. v. Structural Software, Inc., 26 F.3d 1335, 1348 (5th Cir.1994), citing Feist Publications, Inc. v. Rural Tel. Service Co., 499 U.S. 340, 347, 111 S.Ct. 1282, 1288, 113 L.Ed. 2d 358 (1991).

From a burden of proof standpoint, the Court notes what it was expecting to find in plaintiff's presentation.  First, the Court needed a comparative itemization of what language, contained in EDI's copyrighted documents, was infringed by comparable language in SSI's version 3.3 manual.  Second, the Court needed expert testimony from an engineer to explain whether the identified language represented standardized engineering tables or facts, on a line by line basis.  Lastly, the Court needed suggestions, whether from an expert or someone else, as to the manner in which plaintiff believes the identified ideas could have been expressed differently, also on a line by line basis.

On the first issue, the Court notes that plaintiff identified

2

some alleged infringing materials at various times in the record, all of which are not consistent. By this the Court means, for example, that the information presented for consideration by the Special Master in Rec. Doc. 163 is not the same as plaintiff now alleges to be infringing. Plaintiff has now reverted to alleging that language highlighted in Exhibits 203, 204 and 205 introduced at the original hearing violates its copyright. The Court finds this position to be completely disingenuous but it also highlights the need for a newly generated list specifying plaintiff's exact position at this time. Certainly, the Court expected that what plaintiff told the Special Master would be what would be alleged here. That has not been the case.

In all lists which the Court has pertaining to what was alleged to be infringing, there is no comparative list as to which precise language in plaintiff's documents are alleged to be infringed. By this the Court means that plaintiff has identified on a line by line basis specific lines in defendant's manual with which it objects. But it does not provide the Court with a line by line comparison from its own documents. Instead the Court is referenced to extensive outlined language from a page of EDI's documents, all of which cannot possibly be infringed by one line of defendant's manual.

As to item two referenced above, the Court notes that the manual in question is quite technical, being written for engineers. The expert which plaintiff presented has a background in mathematics and no training in engineering. Nor does plaintiff's

3

expert have any training in copyright law, as distinguished from the Special Master who had extensive experience in intellectual property matters.

Lastly, while plaintiff's expert attempted in her deposition to exemplify some areas of defendant's documents where different language might have been used, her presentation was limited. She did not attempt to do so on an item by item basis.

The Court further notes initially that the undersigned limited its inquiry to the revised StruCAD*3D Manual, Version 3.3, for two reasons. First, plaintiff did not file, or attempt to file, an amended complaint before this matter was taken under submission, seeking to expand the Court's inquiry beyond Version 3.3. Secondly, in discussions with counsel as to the scope of the present mandate from the Fifth Circuit, the Court inquired whether it would be possible for versions subsequent to Version 3.3 to be infringing if Version 3.3 did not, in fact, do so. Defense counsel could not argue to the Court that, if Version 3.3 was non-violative of plaintiff's copyright, other versions would nonetheless constitute a problem, per se. In order to conserve resources then, the Court opted to look solely at Version 3.3, being of the opinion that, if Version 3.3 was non-infringing, subsequent versions of the manual based on 3.3 would likewise be so.

The Court was further of the opinion that, if subsequent user manuals were in violation of plaintiff's copyright, they should form the basis of a totally separate law suit. In reaching this conclusion, the Court opines that the current issue pertaining to

4

Version 3.3 is whether it violates plaintiff's copyright in the SACS IV, SACS III, JointCAN II or SeaState Manuals, **in existence at the time this matter was originally tried**. This litigation has not been framed for purposes of adjudicating any and every alleged violation which these parties perceive has occurred to them at the hands of the other for an indefinite period of time.

Returning then to the initial issue of identifying the infringing portions of the manual, the Court has identified the following issues utilizing the report of plaintiff's tendered expert, Dr. Johnette Hassell. Exhibit C, annexed hereto as Exhibit A, to that report contains what Dr. Hassell has termed a breadth study of version 3.3 of the manual. In that exhibit, Dr. Hassell has identified 1050 instances of alleged infringement, all of which come from Chapter 5 of version 3.3. However, Dr. Hassell's report is ambiguous on this point and her deposition is not particularly helpful.

Although the original trier of fact found that version 3.1 of the manual violated plaintiff's copyright, there was never a finding by the court as to which **specific** portions of the manual were violative. Further there is no expert testimony on this issue derived from the initial trial record. Dr. Hassell has determined that all but 64 of these 1050 instances found in version 3.3 violate plaintiff's copyright **solely** because they appear in the same fashion in version 3.3 as they did in 3.1. The following colloquy establishes this fact:

Q.  And then the last column, you've left that blank.  What does that signify, if anything?

A.  Well, at trial, 3.1 was found to be infringing, so if they made no changes to it, I ranked it as still infringing okay.
...

Q.  Re-cross.  Because you just said something I had not heard you say before, in looking at this exhibit.  I had puzzled over why you had left these blank in the far-right column, "Still Infringing/Not Infringing," and I just believe I discovered that you count those as infringing when you did your math on this combinatorial analysis?

A.  Yes.  They were found at trial to be infringing - or the manual was.

Q.  Well, you say "it" was found at trial.
Was there a finding by Judge Beer on a page-by-page, line-by-line basis?

A.  I don't believe so.

Q.  He just says the user manual infringed -
                ...

A.  I believe so.

                ...

Q.  Can you show me any court ruling that says Page A-2-9 of StruCAD 3.1 is substantially similar to any page in the SACS IV Manual, such as 3.4.1?

A.  No.

Q.  So when you did math on percentages, you counted every one of these blanks in "Exhibit C" as infringement?

A.  Yes.
                    Hassell deposition p.  166 et seq.

She performed no other analysis of which she makes anyone aware to

state another basis for infringement.

    Dr. Hassell's premise in this regard is faulty.  Just because

a document has been ruled to violate someone's copyright does not

mean that every line on every page of the document is infringing

language.  To dismiss summarily over 90% of the alleged infringing entries **solely** because they were in the prior manual misses the mark.  The Court notes that because of the similarity of the underlying computer programs of EDI and SSI, it is not unusual for there to be similar, or perhaps even identical, language in both manuals.  The Court expected an itemized appraisal from any expert as to all items alleged infringing.  Because that does not exist from Dr. Hassell, the Court will not further address these same entries.

As to the other 64 instances, the Court has attached the comparison text to this opinion as addenda.  They represent instances where change was made to the language in version 3.1 but which plaintiff alleges still constitute infringement.  In her report Dr. Hassell has stated that "Exhibit C lists all the expression I considered in SSI v 3.3, in summary form, and their infringing/non-infringing status." Rec. Doc. #283, Exh. D at p. 35.

Initially, the Court notes that Dr. Hassell's starting point was taken from plaintiff's list of objections to the newly written version 3.3, generated November 11, 1991 and attached to defendant's initial brief on infringement (Rec. Doc. 283) as Exhibit F.  This exhibit does not contain a list of specifically objectionable language as to plaintiff's documents; it only indicates that language somewhere on the page is a problem.  Version 3.3 of the manual was approved by the Special Master and accepted by the Court.  In her breadth study, Dr. Hassell utilizes alphabetic references as to why a specific line on a bates numbered

document is infringing.   She does not in her report present a
legend indicating what each letter references, making it
extraordinarily difficult for the Court to know with certainty the
precise objection which is being made.   Therefore, the Court is
assuming that the alphabetic references equate to the same legend
as is present on EDI's original list of objections attached to Rec.
Doc 282 as Exhibit F.   This seems to be an accurate assumption
based upon Dr. Hassell's deposition testimony. According to that
legend, the following definitions are to be assume:

> "A" means identical expression
> "B" means substantially identical expression of ideas
> "C" means substantially identical order of expression
>     is used
> "D" means substantially similar expression of ideas
> "E" means substantially similar order of expression is
>     is used.

The Court will attempt to explain its understanding of the
various Addenda by referencing the first two.   Similar information
from the other 62 comparative documents may be gleaned by utilizing
the same approach which the Court will now outline.

The first set of comparative documents is marked Addenda 1,
attached hereto.   Plaintiff objects to lines 4 through 9 on bates
numbered document 519 which is page 5.4-10 of the new StruCAD
manual.   The objection is on the basis of an alleged substantially
identical expression of ideas and substantially identical order of
that expression, i.e., "B" and "C" above, as expressed in the
Seastate manual at page 2-4-5, also forming part of Addenda 1.   The
third page of Addenda 1 is the page in version 3.1 of SSI's manual
that plaintiff claims infringed the Seastate manual page 2-4-5.

8

The second set of comparative documents is marked Addenda 2, attached hereto.  Plaintiff objects to lines 6 through 8 on bates numbered document 549[1] which is page 5.4-40 of the new StruCAD manual.  The objection is on the basis of an alleged substantially identical expression of ideas and substantially identical order of that expression, i.e., "B" and "C" above, as expressed in the SACS IV manual at page 3.4.13, also forming part of Addenda 2.  The third page of Addenda 2 is the page in version 3.1 of SSI's manual that plaintiff claims infringed the SACS IV manual page 3.4.13.

However when one reviews all sets of comparative documents, nowhere is it stated with precision what exact language the Court is to compare to determine if there has been a violation of plaintiff's copyright.  The Court has highlighted in yellow the language in version 3.3 which is alleged still to be infringing on each addenda.  The Court cannot provide similar highlighting for the pages pertaining to SSI's version 3.1 or any of EDI's manuals that Dr. Hassell considered because it has not been provided.  EDI should have presented the specific, or exact, language in its manuals on a line by line comparative basis which it alleges has been infringed by the defendant.  Mr.  Dry, defense counsel, certainly tried to get the information from Dr.  Hassell.  It was not forthcoming as noted in the following colloquy:

EXAMINATION BY Mr. Dry:

---

[1]/ The first page of addenda 2 shows bates document #548 instead of 549.  There are two pages numbered 548.  This document is located between the first page 548 and page 550.  Therefore, the Court concludes this is page 549 which the parties have referenced.

Q.  Let me put it in the form of a question.  If you'll notice on "Exhibit C," Page 7 – you notice the column that says "Line," it's the second column, you say Line 17, 18, 19 and 20, and then under "Objectionable," you have "PX204," and then you have "PGRUP" in capital letters, and over on the far right, "Still Infringing/Not Infringing," and you have "Infringing" for those four, and my question:  What is infringing, the use of PGRUP or something else?  I just want to know.

A.  Something else.

Q.  Okay.  And what is the something else?

A.  It's a phrase or passage that occurs at Line 18, another at Line 19 and another at 20.

Q.  Now, how do we know what it is that is infringing and objectionable?

A.  Because of the breadth and size of this study, I didn't, by hand, record every phrase in this spreadsheet.

Q.  Well, how would we know, then, using this report, what to change to make it noninfringing?  Or, better yet, how would we know what's objectionable?

A.  You have that in the Plaintiff's Written Objections after the Special Master's report.  There's a list of things that EDI considers objectionable.

Q.  Well, then, is it your testimony that this, literally, is just your recapitulation of what EDI submitted as an objection to the Special Master's report?

A.  No.  That's not true.

Q.  Well, how would I know what you mean on Line 17 on "Exhibit C," Page 7, by referring to what EDI submitted ten years ago?

A.  Well, pull up the two documents in question, look at Line 17 in the "Plaintiff's Exhibit 204," and then compare that to what's on the indicated page number in version 3.3 – that's StruCAD 3.3.

Q.  So what you're saying, that what I find, is that just coincidentally what EDI said ten years ago?  I mean, I'm trying to figure out why what EDI said ten years ago is now what you're saying in your report.

10

MR. POTTER:
    Object to the form.

THE WITNESS:
    Because I looked at them.  I looked at them all.

Q.  So what you're really saying here is that you agree with everything EDI said in their submission to the objection to the Special Master's report?

MR. POTTER:
Object to the form.  It mischaracterizes prior testimony.

EXAMINATION BY MR. DRY:

Q.  Well, if I'm wrong, tell me.

A.  Okay.  What is your question?

Q.  What I'm getting from your testimony is that each of these lines where it says infringing is - there's a corresponding objection in EDI's objection to the Special Master's report?

A.  There is.

                    ...
Q.  So now we get back to the question I asked a moment ago.  Let's assume that down here in "Plaintiff's Exhibit 204," bates stamp 613, line 6, plate, what if there is no corresponding description in EDI's objection to the Special Master's report, how do I know what you're referring to?

MR. POTTER:

    I object.  That mischaracterizes what she just told you.

Q.  Well, how do I know what you're objecting to?

A.  If you look at the line and the EDI manual and find this corresponding page in the SSI one, you will find that it is still there.

Q.  What's still there?

A.  The objection to an infringing piece or substantially similar piece, EDI characterized it as infringing.

Q.  We keep getting back to EDI.
    Now your testimony is that what you're referring to is what EDI has said is infringing?

11

A.   I looked at everything EDI said was infringing.

Q.   Okay.

A.   I made judgments about each one.  For some of them, I did not agree, so they do not appear in this report.

          . . .

A.   The items that I consider to be substantially similar between StruCAD 3.3 and the EDI Manuals is a subset of the list that EDI objected to as "Exhibit D" in their written objections to the Special Master's report.

Q.   That's my understanding.  We're on the same page now. Thank you.  Just one final question on that point. Did you find any infringing that they didn't object to?

          . . .

A.   I did not search for any.

                              Deposition Johnell Hassell
                              page 139 - 147

Defense counsel then went on to determine the scope of Dr. Hassell's investigation.  Clearly, in reaching a conclusion as to whether something was or was not infringing, Dr.  Hassell did not examine any documents to determine the origin of the expressions found in StruCad 3.3.  In other words, prior Synercom documents were not examined to determine if currently objectionable phrases were in the marketplace because of the actions of someone else. "My report does not have results of determining whether or not common phrases between EDI and SSI came from anywhere else". Hassell deposition p. 154.  And further

Q.  Do you have an understanding that the only two equivalent pieces of Structural software that offer substantially the same calculation alternatives are StruCAD and the EDI programs?

A.  Among the ones that I looked at, a qualified yes.  And the qualification is that while, according to the manuals, SSI added some other activities, that they retain all of the

12

options and approaches that are in the EDI Manual. ...

Q. ...To the extent you could see similarity in the user manuals, did you go back behind EDI?

A. No. I used the versions that were given me.

Q. Okay. So you didn't try to determine whether or not any of this derived from Synercom?

A. That was not my charge.

Hassell depo. p. 109, et seq.

Nor did Dr. Hassell attempt to determine how much, if any, commonality between the two manuals occurred because of the requirements of the underlying software. "That was not my charge, so no, I did not." Hassell deposition p. 155. Note also the following colloquy from Dr. Hassell's deposition:

Q. Do you have any knowledge of whether StruCAD software was accused of infringing software of EDI?

A. I was not asked to look into that.

Q. What's your understanding of the similarity in the underlying software?

A. I didn't review the software, so I cannot tell you.

Q. Well- and you have no understanding of similarity between the software of StruCAD and EDI?

A. I did not see them, so I cannot have an opinion on similarity.

Hassell deposition p. 106

Yet it is also apparent that Dr. Hassell suggests that, if source codes of the program were changed, there would be alternatives to command codes which EDI does not like. Hassell deposition p. 157-158. However, clearly SSI does not have to do this because EDI's program is not subject to copyright.

Additionally, Dr. Hassell did not look at the overall

13

organization of the StruCAD 3.3 manual. "I didn't do that in the interest of time." Hassell depo. p. 128.   Further

> Q. ... Did you try to compare order in sequence between EDI and StruCAD?
>
> A.   I did it on the individual pages.   But I did not do it across the entire chapter.
> Hassell depo p.130

As the Court understands it, plaintiff is complaining about the manner in which the StruCAD 3.3 manual instructs users to put data into a card or line for the program to function.   However, even Dr. Hassell has to admit there are a limited number of ways to tell a user how to enter data into this program.   Hassell depo. p. 133.   It is further conceded by Dr. Hassell that 40% of the items that EDI had identified at trial as being infringing had been corrected in Version 3.3.   Plaintiff, nevertheless, continues to argue that 60% remained unchanged or, even though slightly changed, remain substantially similar.   Hassell depo. p. 89.

The Court expected that Dr. Hassell would be exquisitely precise in defining which exact portions of the StruCad 3.3 manual constituted infringing text.   That expectation has not been met. Before any court can begin to pass judgment on whether text has infringed a copyright, the exact nature of the infringing language must be clearly identified.   All the Court has to consider based upon Dr. Hassell's report and testimony to identify such alleged infringing text is Exhibit C.   That document virtually copies EDI's exhibits entered in its first trial pertaining to why StruCAD 3.1 infringed upon any of the SACS suite of operational manuals.   That

14

information does not address StruCAD 3.3 because it was generated before version 3.3 was written.   This Court has no intention of reviewing plaintiff's exhibits entered into the original trial of this matter, prior to the writing of the current manual, and speculating as to why plaintiff thinks version 3.3 still violates the original user manuals copyrighted by EDI.   Plaintiff has the burden of proof to set this out with clarity.

The only document which Dr. Hassell stated should be reviewed in order to determine what portions of version 3.3 plaintiff contends have violated its copyright is plaintiff's objection to the report of the special master.  Rec. Doc. # 180.  However, that document has no addendum and contains no such delineation of alleged infringing text in it body.

The only place in the record where alleged infringing language pertaining to version 3.3 has been chronicled is in Rec. Doc. # 163, plaintiff's brief on the issue of infringement of defendant's rewritten manual for the Special Master.   Attached to that document, and presented to the Special Master for consideration, although still not comparing language on a line by line basis, are some of the exhibits annexed hereto in Addenda 1 through 64.  While this document constitutes argument of counsel, it establishes that plaintiff knows how to present information in an organized comparative format.  This same format is the only sensible way for someone to identify the language alleged to be protected and to compare it with language alleged to be infringing.   Nowhere has plaintiff's expert matched up specific language alleged to be

15

protected in EDI documents with language alleged to be infringed by version 3.3.  Dr.  Hassell had Rec. Doc. 163 and reviewed it prior to rendering her report.  See Exh. A, of Hassell's report entitled Material Reviewed, p.2, column entitled Brief, Pleadings, Findings, last entry.  This same format should have been utilized but should also have compared what specific line on plaintiff's own documents matched a similar specific line on defendant's documents.  If plaintiff could identify line by line on defendant's documents what was violative, it could make an identification on its own documents, in a similar line by line fashion, where the violated language existed.

The Court will not assume that the highlighted language identified in plaintiff's exhibits 203, 204 and 205 referenced in toto on Hassell's breadth study is the language which she has determined is infringing.  First it appears that she did not consider those exhibits other than as they related to the 64 documents attached as Addenda A, except to verify that all or part of same that were in version 3.1 of the manual are also in version 3.3.  Second, Dr.  Hassell further testified that, when she considered plaintiff's suggestions on infringement, she disagreed with some of EDI's conclusions.  "There are things that are in the EDI list of objections that are not in my list".  Hassell deposition p.142. She has never testified or listed in her report what specific language in EDI's documents she contends violated other specific language in version 3.3 or which of EDI's contentions she eliminated from its original trial exhibits 203,

16

204 and 205..

However, in an abundance of caution the Court has reviewed all portions of Exhibit K of Rec. Doc.# 163, plaintiff's brief to the Special Master on issues of infringement.   That document has highlighted language comparing Version 3.3 with plaintiff's manuals, although still not in the form the Court would like to see.   The Court has compared the wordings and expression of thoughts set forth thereon.   While the ideas conveyed all relate to the input of information on non-copyrighted computer program cards, the verbiage used to convey that information appears sufficiently different to the Court for the undersigned to opine that there is no violation of plaintiff's copyrights.   The Special Master and the original fact finder, by virtue of his adoption of the Special Master's findings, opined similarly.

The Special Master correctly stated the appropriate law which must be applied to the issue at hand, which the Court herewith adopts in extenso.

In order to establish copyright infringement of its user manuals, EDI must show that it had ownership of a valid copyright in the manual and that the defendants infringed that copyright by copying the protected material.   Miller v. Universal City Studio, Inc., 650 F.2d 1365 (5th Cir.1981).   The Copyright Act of 1976, as amended, applies to "original works of authorship fixed in any tangible medium of expression."   17 U.S.C.   102.   Copyright protection extends to the expression of an idea, but not to the idea itself. 17 U.S.C. 102(b).   Originality, copyrightability, and

compliance with statutory formalities are relevant to determining the enforceability of a copyright.  <u>Plains Cotton Co-op v.   Good Pasture Computer Service</u>, 807 F.2d 1256, 1260 (5th Cir.), *cert. denied*, 484 U.S. 821, 108 S.Ct. 80 (1987);  Rec. Doc.  175.

EDI established valid ownership of a copyright in its various manuals.   The particular computer interfaces pertaining to this suite of programs are not subject to copyright, per this Court's prior opinion.   Boxes with legends in them included in the copyright material of plaintiff's manuals are not subject to copyright because they are input forms or copies of interfaces not flow diagrams.  However, the arrangement of factual information in the manuals as a whole may be protected.

Once ownership of a valid copyright is established, plaintiff must establish copying.   Copying is evidenced by SSI's access to the alleged infringing work, and substantial similarity between the two works.  <u>Alcatel USA, Inc.   v.   DGI Technologies, Inc.</u>, 166 F.3d 772 (5th Cir.  1999).    The Court finds that SSI had sufficient access.

Substantial similarity between two works is determined by an extrinsic test and an intrinsic test.   The extrinsic test is an objective comparison of specific expressive elements.  <u>Cavalier v. Random House, Inc.</u>, 297 F.3d 815 (9th Cir.2002).   Criteria which may be analyzed include the type of work involved, the materials used, the subject matter and the setting for the subject.

The Court finds that the idea of version 3.3 and plaintiff's manuals is substantially similar.   Both works are manuals used in

18

conjunction with computer programs.  Both works were designed for use with the same type of computer program, i.e., one which analyzes offshore structures.  Both works were prepared for use primarily by engineers designing offshore structures.  Both works explain how to input data into the underlying computer program by entering variables in designated fields on input forms.

If there is substantial similarity determined through the extrinsic test, the trier of fact must decide whether there is substantial similarity by applying an intrinsic test.  The intrinsic test focuses on the response of the ordinary reasonable person who comprises the audience for whom the works are composed. Here the intended audience is unquestionably engineers who design offshore structures.

In order to determine substantial similarity, there must be a side-by-side comparison of both works, original and copy, to determine whether the audience for the work would view it as similar to the alleged original. Peel & Company, Inc. v. The Rug Market, 238 F.3d 391 (5th Cir.2001); Creations Unlimited, Inc. v. McCain, 112 F.3d 814 (5th Cir.1997) Plaintiff may not claim copyright protection in an idea and an expression that is, if not standard in the industry, then commonplace in the computer software industry.  Telemarketing Resources v. Symantec Corp., 12 USPQ 2d 1991, 1995 (N.D. Cal.  1989), aff'd. in part, remanded Brown Bag Software v. Symantec Corp., 960 F.2d 1465 (9th Cir.  1992).

Plaintiff may not claim copyright protection in common commands or phrases that were already available in other computer

19

program manuals where the idea and expression of such terms cannot be separated. <u>Ashton-Tate Corp. v. Ross</u>, 728 F.Supp. 597, 602 (N.D. Cal. 1989), aff'd 916 F.2d 516 (9th Cir. 1990). Here, abbreviations and short phrases such as MEMB (for member), SECT (for section), HYDRO (for hydrostatic), CONC (for concentration), GRUP (for group) and OPT (for options) which are available in other user's manuals, are common in the industry and are natural abbreviations which are not subject to copyright. SSI's use of unprotected material is not a violation of the copyright act.

Factual information included on the input forms, including variable names is not copyrightable. <u>Feist Publications v. Rural Telephone Serv. Co.</u>, 111 S.Ct. 1282 (1991) (purely factual information, absent original arrangement and selection, is not copyrightable). However, if a compiler makes choices regarding the selection and arrangement of the factual data that entail a minimum degree of creativity, the resulting work may be sufficiently original to receive copyright protection. Market factors play a significant role in determining the sequence and organization of a computer program, and necessarily affect a user's manual that provides instructions regarding the program. <u>Plains Cotton Co-op</u>, at 1260. The Special Master found that, in this case, external factors determine the choice of variable names, what data is input in particular fields on the input forms and the order of the input forms. This Court agrees.

The Special Master further found that similarities in structure, arrangement and expression of ideas with regard to the

20

input of data in the various manuals were dictated by functional considerations, were commonplace in the computer market and were non-copyrightable ideas.  This Court agrees.

EDI has argued that the Special Master ignored three of the four SACS Manuals in reaching his conclusion that version 3.3 is non-infringing.  The undersigned does not believe that to be the case.  The Special Master accurately referenced his charge from the court and further referenced the Seastate manual in his findings. Rec. doc. 283, Exh. E at p.6, item (23).  In its objections to the Special Master's report, plaintiff argued this to the District Judge.  The Court considered that argument and adopted the report. The Court further notes that, in his report, the Special Master sought sanctions against EDI for lack of cooperation in the process to write a new manual which would not infringe.

But more at issue here, even though plaintiff's expert has not identified the particular language it objects to in defendant's manual, which is per se fatal to a determination of infringement, all of plaintiff's objections as set forth in Rec. Doc.   163, Exhibit K, appear to relate to instructions for data entry into the program which is not subject to copyright.   There are limited numbers of ways to instruct someone how to enter data.  Because the SACS suite of programs and StruCAD are virtually identical, the data will have to be entered into the program in much the same sequence for each program.  This makes it even more important that plaintiff be specific as to the problematic language.

The failure to identify the specific language which plaintiff

21

alleges has been infringed in its own documents, thereby allowing the Court to compare the alleged infringing language in version 3.3 which has been identified, constitutes a failure of plaintiff to prove its case by a preponderance of the evidence.  The Court would be in a position of speculating as to what might be considered infringing if the Court attempted to go forward and defendant is prejudiced by being precluded from arguing that alleged infringed language in plaintiff's documents was in the marketplace because it originated in Synercom documents or was a commonplace expression in the computer industry.

If the language plaintiff opposes is the same language referenced on Rec. Doc.  163, Exhibit K, the Court has no reason to disagree with the findings of the Special Master.

Judgment on this issue will be in favor of the defendants.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

# SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED

